IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PRAXAIR, INC. and PRAXAIR )
TECHNOLOGY, INC., )
  )
       Plaintiffs, )
  )
  v. ) Civ. No. 03-1158-SLR
  )
ATMI, INC. and ADVANCED )
TECHNOLOGY MATERIALS, INC., )
  )
       Defendants. )

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

Praxair, Inc. and Praxair Technology Inc. ("plaintiffs") filed this patent infringement action on January 9, 2004 against ATMI, Inc. and Advanced Technology Materials, Inc. ("defendants"). (D.I. 1)  A pretrial conference was held on November 9, 2005 in which several issues from the Joint Pretrial Order (D.I. 230) were addressed. (D.I. 239)  The court requested brief memoranda from defendants on three of these issues by November 16, with replies by plaintiffs due on November 23. (D.I. 239)

**II.   BACKGROUND**

Plaintiffs sued defendants for infringement of certain

claims of United States Patent Nos. 6,045,115 ("the '115 patent"), 6,007,609 ("the '609 patent") and 5,937,895 ("the '895 patent"). (D.I. 1) The patents in suit disclose embodiments of an apparatus, which safely controls the discharge of pressurized fluids from the outlet of pressurized tanks. (D.I. 131 at 7) The inventions disclosed by the patents help control the handling, storage and delivery of toxic fluids and constrain the flow of gas during normal operating, as well as during any kind of valve mishandling or downstream failure. Id. at 8

On November 8, 2005, the court granted partial summary judgment to defendants that claim 1, and all depending claims, of the '895 patent were invalid as indefinite. (D.I. 233) The remaining claims at issue are claims 1, 2, 6, 7 and 8 of the '609 patent and claims 18 and 20 of the '115 patent. The court also granted plaintiffs' motion to exclude several belatedly-identified prior art references. (D.I. 233)

During the pretrial conference, the court ruled on several discovery and evidentiary disputes. The court decided that Mr. Sackett of Swagelok, who was not identified by name during discovery, is precluded from testifying regarding the identity of the filter disclosed in the Zang reference.[1] (D.I. 239 at 52)

---

[1] Defendants did disclose Swagelok during discovery and that a representative would be testifying pursuant to the scheduling order. The representative was identified by topic and document discovery was performed. However, the document discovery had nothing to do with Mr. Sackett's testimony regarding the type of

2

The court also ruled that any documents inadvertently disclosed by plaintiffs need not be returned because plaintiffs did not properly follow the provisions of the protective order to regain possession of the documents. (D.I. 239 at 56) The court ruled that no legal impediment exists for defendants to assert that any of the remaining claims at issue are indefinite. (D.I. 239 at 57) Finally, the court concluded that Dr. Sherman's expert testimony is admissible because defendants were given the name of every past case in which Dr. Sherman testified, even though they were not given the actual trial or deposition testimony. (D.I. 239 at 67)

The remaining issues, on which the court did not rule, were: whether defendants can present evidence of plaintiffs' commercial product and its prototypes; whether defendants timely disclosed the issue of simultaneous invention during the discovery phase of the trial; whether Dr. Karvelis' supplement to his expert report of the proper testing protocol prejudiced defendants and, therefore, should be excluded;[2] whether capillary action in sintered metal filters is excluded from the case; and whether the Skousgaard and Miller references were timely identified.

---

filter disclosed in the Zhang patent.

[2]Defendants no longer assert the need to rebut the supplement to Dr. Karvelis' expert report because the testing relates only to the '895 patent, which is no longer in the case. (D.I. 235)

3

## III. DISCUSSION

### A. Definiteness of Construed Claims

As an initial matter, the court revisits a ruling made on the bench during the pretrial conference. In light of Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367 (Fed. Cir. 2004), the construed claims are definite as a matter of law. "We have held that a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness. Id. at 1371. (citing Honeywell Int'l, Inc. v. Int'l Trade Comm'n, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). "That is, if the meaning of the claim is discernible, 'even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.' Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001)." Id. Because the court was able to construe the limitation "at about the axial midpoint," the claims are definite, as a matter of law. Id. at 1371.

### B. Commercial Embodiment of Claimed Invention

Defendants argue that evidence of plaintiffs' commercial embodiment of the claimed invention, UpTime, and "events leading up to the filing of the patents-in-suit" are relevant to the

4

issues of noninfringement and the reverse doctrine of equivalents. (D.I. 237) The court concludes, however, that such evidence shall be excluded in the infringement determination.[3]

The Federal Circuit has been very clear that "it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent," as construed by the court. Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994). Defendants argue that, because the UpTime product has both a "flow restrictor" and a "filter," plaintiffs referred to, and considered, a flow restrictor as separate from a filter. The claims, as construed by this court, define a flow restrictor as something that "serve[s] to restrict the rate of flow [of gas]." (D.I. 234) Whether or not a filter serves to restrict the flow of gas is a question for the jury and does not require analysis of the UpTime product.[4] Therefore, the

---

[3] While evidence leading up to the filing of the patents may have been relevant evidence, the court notes that the earliest date noted on any of the documents produced was 1999, by which time all the patents in issue had been filed. Therefore, even though defendants' brief states "events leading up to the filing of the patents" (D.I. 237 at 4), the documents instead relate to events leading up to the commercial embodiment.

[4] The only evidence of this kind that could be relevant is evidence that plaintiffs admitted in some tests or prototypes that the filters did not restrict the rate of flow of the gas.

court declines to allow as evidence of noninfringement the UpTime product or the events in its development. The risks of jury confusion and prejudice far outweigh the probative value of such evidence.

C. Disclosure of Simultaneous Invention

Plaintiffs assert that any testimony[5] or evidence regarding when defendants designed the inventions claimed in defendants' U.S. Patent Nos. 6,101,816 (the '816 patent) and 6,089,027 (the '027 patent) should be excluded because the '816 and '027 patents cannot be considered prior art and the evidence will only confuse the jury. In this case, witnesses (including Luping Wang) were made available to plaintiffs for discovery regarding the time of conception and reduction to practice of the claimed inventions of the '816 and '027 patents. These patents disclose the use of a membrane[6] (D.I. 236 at 1) and plaintiffs assert that a membrane can be a flow restrictor, as defined in the patents at issue.

Evidence of simultaneous invention is relevant to the issue of obviousness, as a factor in the determination of the level of skill in the art. Ecolochem, Inc. v. S. Cal. Edison Co., 227

---

[5]Specifically, plaintiffs contest the testimony of Luping Wang.

[6]The parties apparently had an agreement to consolidate deposition discovery in this Delaware action and in a New York law suit involving the '816 and '027 patents. An interrogatory was answered by defendants on August 19, 2004 in the New York action disclosing the relevant information.

6

F.3d 1361, 1379 (Fed. Cir. 2000) ("The fact of near-simultaneous invention, though not determinative of statutory obviousness, is strong evidence of what constitutes the level of ordinary skill in the art. . . . [T]he possibility of near simultaneous invention by two or more equally talented inventors working independently, . . . may or may not be an indication of obviousness when considered in light of all the circumstances.")(internal citations omitted). However, in the case at bar, defendants repudiated their claim to an early conception date; in the New York litigation, defendants did not dispute that the inventors of plaintiffs' patents were first to invent. Therefore, plaintiffs had no reason to conduct discovery on the issue of first to invent. Furthermore, the disclosure of the invention dates of the '816 and '027 patents contains no mention of a simultaneous invention argument, giving plaintiffs no reason to conduct discovery on the issue of simultaneous invention. To avoid unfair surprise, the testimony of Luping Wang is inadmissible as evidence of simultaneous invention.

### D. Capillary Action

The claims at issue use the term "capillary" to describe tubes and passageways. Plaintiffs argued, during the claim construction phase of the case, that "capillary passages" must be construed to mean "passages that exhibit capillary action." (D.I. 234 at 8) The court concluded that, as used in the

specification and the claims, the term "capillary" means "pertaining to or resembling a hair; fine and slender." (D.I. 234 at 9) Plaintiffs assert that capillary action is still relevant to the issues at bar in that it is a test for the existence of capillary tubes, as properly construed. Plaintiffs contend that placing a filter into a liquid is one way to test for the existence of fine and slender tubes. If the liquid disappears, the filter must have fine and slender tubes into which the liquid is flowing.[7] If the liquid does not disappear, no such tubes exists.

The court finds that evidence of capillary action will be unduly confusing to the jury. Capillary action is not required in the claim construction. Presenting the jury with this test and calling it "capillary action" and then reading the claims which require "capillary passageways" will confuse and mislead the jury. Furthermore, the phenomenon of upward movement of a liquid through a narrow tube is not relevant to the invention at issue. The invention, as claimed and construed, is related to the restriction of gas flow through fine and slender tubes. The court concludes that evidence of the phenomenon of capillary action is excluded under Fed. R. Evid. 403 because its probative value, as one way to prove the existence of thin and slender tubes, is outweighed by the danger of unfair prejudice, confusion

---

[7]This phenomenon is called capillary action.

of the proper claim construction and the potential for misleading the jury.

### E. Prior Art References

Defendants have raised reargument on the issue of excluding United States Patent Nos. 2,666,297 (the "Skousgaard patent") and 3,245,583 (the "Miller patent"). The court declines to change its prior ruling regarding the two prior art references. (D.I. 233) Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference. It is undisputed that the two references at issue, and the intent to rely on them for invalidating the asserted claims, were not disclosed to plaintiffs by defendants until after the close of fact discovery. Therefore, these references are excluded from defendants' invalidity case.

### IV. CONCLUSION

At Wilmington this 28th day of November, 2005, having reviewed the evidentiary disputes raised at the pretrial conference;[8]

IT IS SO ORDERED that:

1. Defendants are precluded, as a matter of law, from raising the issue of indefiniteness as it relates to claims that have been construed.

2. Evidence of the commercial embodiment of the claimed

---

[8] The evidentiary disputes are detailed in the transcript for the pretrial conference. (D.I. 239)

invention is not admissible for the infringement analysis, but may be used for the reverse doctrine of equivalents analysis.

3.  Testimony by Luping Wang regarding simultaneous invention is inadmissible.

4.  Evidence of capillary action is excluded.

5.  The Skousgaard and Miller references are excluded.

_____
United States District Judge